IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| TERRY RUTAN, | ) |
| | ) |
|       Plaintiff, | ) |
| v. | )   Civil Action No. 5:15-09264 |
| | ) |
| STATE BOARD OF RISK AND | ) |
| INSURANCE MANAGEMENT, *et al.*, | ) |
| | ) |
|       Defendants. | ) |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is Defendants West Virginia Division of Corrections, Jim Rubenstein, William Vest, Gary Webb, Melinda Frazier, Mary Beth Toler, Irisca Leggett, Danny Aliff, Anthony Butler, and Christopher Petry's Motion to Dismiss (Document No. 3), filed on July 6, 2015. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by Defendants in moving to dismiss. (Document No. 5.) Plaintiff failed to file a Response to Defendants' Motion. Having conducted a thorough examination of the record, the undersigned has determined and hereby respectfully recommends that Defendants' Motion to Dismiss should be granted.

**FACTUAL AND PROCEDURAL BACKGROUND**

On June 11, 2015, Plaintiff, proceeding *pro se* and in confinement at St. Mary's Correctional Center, filed his Complaint in the Circuit Court of Raleigh County, West Virginia.[1]

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a

(Document No. 1-1.) Plaintiff names the following as Defendants: (1) State Board of Risk and Insurance Management; (2) Jim Rubenstein, Commissioner; (3) West Virginia Department of Corrections ["WVDOC"]; (4) William Vest, Warden; (5) Gary Webb, Corrections Officer; (6) Ms. Frazier, Corrections Officer; (7) Ms. Toler, Corrections Officer; (8) Ms. Leggett, Correctional Officer; (9) Mr. Aliff, Correctional Officer; (10) Mr. Butler, Correctional Officer; and (11) Mr. Petry, Correctional Officer. (Id.) Plaintiff alleges that Defendants "violated plaintiff's rights under the Constitution and laws of the United States." (Id., p. 5.) First, Plaintiff complains that he lost his job "working for Building Services out of Beaver, WV, while at Beckley Correction Center." (Id., p. 3.) Plaintiff explains that Defendant Webb instructed Plaintiff to find another job during the period of time that Plaintiff's boss, Gary Slusher, was off work due to medical reasons. (Id.) Plaintiff argues that no one "contacted Mr. Slusher to see what was going on with [his] job" and "they said [Plaintiff] was fired and/or quit [his] job." (Id.) Plaintiff alleges that when Mr. Slusher returned to work, Mr. Slusher stated that Plaintiff still had a job. (Id.) Plaintiff, however, complains that Defendants would not let him return to work for Mr. Slusher. (Id.) Plaintiff states that he attempted to find another work release job, but no one was hiring. (Id.) Plaintiff states that his "boss" told him to file for unemployment, "but they refused to file for it" because "they said [Plaintiff] was not allowed to receive it while at the center." (Id.) Plaintiff, therefore, contends that he was inappropriately removed from the work release program because he did not have a job in the community. (Id.)

Second, Plaintiff states that he "also worked for the Beckley Correctional Center in the kitchen for Aramark Company for 97 days." (Id.) Plaintiff complains that he was not paid for his

---

less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

work in the kitchen. (Id.) Third, Plaintiff complains that while he "was laid off from 9/12/2013 to 2/21/2014, the work release center collected rent from [him] of $5.00 per day equaling approximately $850.00." (Id., p. 4.) Fourth, Plaintiff states that when he was transferred to Pruntytown Correctional Center on February 21, 2014, his personal belonging were taken and put in storage by the Beckley Work Release. (Id.) Plaintiff claims that even though he requested that his property be mailed to his sister, his sister never received his personal property. (Id.) Plaintiff, therefore, argues that Defendants "deprived Plaintiff of his property interest of over eight hundred and fifty dollars currency, theft of personal property valued at over two thousand dollars, obtained monies under false pretense, denied a fair wage for work performed, and subjected Plaintiff to an undue hardship in violation of this constitutional rights." (Id.) As relief, Plaintiff requests monetary damages. (Id., p. 5.)

The Docket Sheet indicates that the Clerk of Raleigh County issued Summonses for all Defendants on June 11, 2015. (Document No. 1-7.) Defendants WVDOC, Webb, Frazier, Toler, Aliff, and Leggett were served on June 15, 2015. (Document Nos. 1-1, 1-2, 1-3, 1-4, 1-5, 1-6, and 1-7.) The Summonses for Defendants Butler and Petry were returned un-executed on June 22, 2015. (Document No. 1-7.) On July 2, 2015, Defendants WVDOC, Rubenstein, Vest, Webb, Frazier, Toler, Leggett, Aliff, Butler, and Petry filed their Notice of Removal with this Court. (Document No. 1.)

On July 6, 2015, Defendants WVDOC, Rubenstein, Vest, Webb, Frazier, Toler, Leggett, Aliff, Butler, and Petry filed their Motion to Dismiss and Memorandum in Support. (Document Nos. 3 and 4.) Defendants argue that Plaintiff's Complaint should be dismissed based upon the following: (1) "Individual Defendants Butler and Petry have not been served with process"

3

(Document No. 4, pp. 2 - 5.); (2) "Defendants Rubenstein and Vest have not been served with process" (Id., pp. 5 - 6.); (3) "Plaintiff failed to exhaust his administrative remedies and therefore his claims should be dismissed with prejudice" (Id., pp. 6 - 10.); (4) "Claims for violations of the United States Constitution against the WVDOC and the individual Defendants in their official capacities must be dismissed because these Defendants are not 'persons' under 42 U.S.C. § 1983 against whom a claim may be asserted" (Id., pp. 10 - 11.); (5) "The Defendants are entitled to qualified immunity from suit and should be dismissed" (Id., pp. 11 - 19.); and (6) "Plaintiff cannot assert a claim for punitive damages" (Id., p. 19.).

In support of their Motion, Defendants attach the following Exhibits: (1) A copy of the Summonses issued for Defendants Butler, Petry, and Webb (Document No. 3-1, pp. 1 - 7.); (2) A copy of Plaintiff's "Inmate Request to Staff" dated December 30, 2013 (Id., p. 8.); (3) A copy of a Memorandum to Plaintiff from Case Manager Gary Webb dated December 30, 2013 (Id., pp. 9 - 10.); (4) A copy of a letter addressed to Defendant Rubenstein from Plaintiff dated July 24, 2014 (Id., pp. 11 - 12.); (5) A copy of Plaintiff's "Work Release Employment Agreement" dated September 20, 2012 (Id., p. 13.); (6) A copy of Plaintiff's "W. Va. Division of Corrections Inmate Grievance Form" regarding the collection of rent dated July 11, 2014 (Grievance No. 14-MCD-B-065) (Id., pp. 14 - 15.); (7) A copy of Plaintiff's "W. Va. Division of Corrections Inmate Grievance Form" regarding the collection of rent money and his pay for working in the kitchen dated June 16, 2014 (Id., p. 16.); (8) A copy of Plaintiff's "W. Va. Division of Corrections Inmate Grievance Form" regarding the collection of rent dated July 11, 2014 (Grievance No. 14-MCD-B-066) (Id., p. 17.); and (9) A copy of a blank "W. Va. Division of Corrections Inmate Grievance Form" (Id., pp. 18 - 19.)

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on July 7, 2015, advising him of the right to file a response to the Defendants' Motion to Dismiss. (Document No. 5.) Plaintiff failed to file a Response to Defendants' Motion to Dismiss.

## THE STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

## DISCUSSION

**1.     Service of Process:**

When sufficiency of service is raised as a defense under Rule of Civil Procedure

12(b)(5), the plaintiff has the burden of establishing that service of process has been effectuated in conformity with Rule 4. See Wolfe v. Green, 660 F.Supp.2d 738, 750 (S.D.W.Va. 2009). When it is evident that a party has failed to accomplish service of process pursuant to Rule 4, dismissal is in order. Federal Rule of Civil Procedure 4(e) states how a party must serve a Summons and Complaint upon an individual within a judicial district of the United States as follows:

> **(e)** **Servicing an Individual Within a Judicial District of the United States.** Unless federal law provides otherwise, an individual - - other than a minor, an incompetent person, or a person whose waiver has been filed - - may be served in a judicial district of the United States by:
>
> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>>
>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>>
>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Federal Rule of Civil Procedure 4(m) provides as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court - - on motion or on its own after notice to the plaintiff - - must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Based upon a review of the record, it appears that service was attempted upon Defendants pursuant to Rule 4(e)(1) of the Federal Rules of Civil Procedure. Rule 4(e)(1) provides that an

individual may be served "by following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Rule 4(d)(1) of the West Virginia Rules of Civil Procedure provide, in pertinent part, as follows:

> **(d)** **Manner of service.** Personal or substituted service shall be made in the following manner:
>
> (1) *Individuals*. Service upon an individual other than an infant, incompetent person, or convict may be made by:
>
> (A) Delivering a copy of the summons and complaint to the individual personally; or
> (B) Delivering a copy of the summons and complaint at the individual's dwelling place or usual place of abode to a member of the individual's family who is above the age of sixteen (16) years and by advising such person of the purport of the summons and complaint; or
> (C) Delivering a copy of the summons and complaint to an agent or attorney-in-fact authorized by appointment or statute to receive or accept service of the summons and complaint in the individual's behalf; or
> (D) The clerk sending a copy of the summons and complaint to the individual to be served by certified mail, return receipt requested, and delivery restricted to the addressee; or
> (E) The clerk sending a copy of the summons and complaint by first class mail, postage prepaid, to the person to be served, together with two copies of a notice and acknowledgment conforming substantially to Form 14 and a return envelope, postage prepaid, addressed to the clerk.

### A. Defendants Butler and Petry:

In their Motion to Dismiss, Defendants Butler and Petry argue that they have not been served with process. (Document No. 4, pp. 2 - 5.) Specifically, Defendants Butler and Petry note that service of process was attempted on each by certified mail addressed to Beckley Correctional Center, 111 S Eisenhower Drive, Beckley, WV 25801. (Id.) Defendants Butler and

Petry, however, note that neither were employed at Beckley Correctional Center when service of process was attempted. (Id.) Defendants, therefore, argue that "[t]he attempted service of process on Mr. Butler and Mr. Petry at their former workplace is not effective services under the Federal Rules of Civil Procedure and is insufficient to advise them of the pending civil action." (Id.) Plaintiff failed to file a Response to Defendants' Motion.

Based upon a review of the record, the undersigned finds that service of process was not effectuated upon Defendants Butler or Petry pursuant to either the Federal or West Virginia Rules of Civil Procedure. Although the Rule 4(d)(1)(D) of the West Virginia Rules of Civil Procedure allows for the service of process by certified mail, such service was not accomplished upon Defendants Butler and Petry in the instant case. The Docket Sheet reveals that the Certified Mail Return Receipt cards indicate that acceptance of the certified mail was not accomplished as to Defendants Butler and Petry. (Document No. 1-7 and Document No. 3-1, pp. 1 - 4.) The Return Receipt cards reveal that service was attempted by addressing the certified mail to the attention of Defendants Butler and Petry at Beckley Correctional Center. (Document No. 3-1, pp. 1 - 4.) The Return Receipt cards exhibit that the certified mail was returned with the following notation "Return to Sender, Not Deliverable As Addressed, Unable to Forward." (Id.) To effectuate personal service by certified mail, the clerk must send "a copy of the summons and complaint to the individual to be served by certified mail, return receipt requested, and delivery restricted to the addressee." W. Va. R. Civ. Pro. Rule 4(d)(1)(D). Although service was attempted by certified mail, service was unsuccessful because Defendants Butler and Petry were not located at the Beckley Correctional Center address. The Court notes that it is Plaintiff's responsibility to provide the Clerk with the proper address. Furthermore, the Court notes that

Defendants Bulter and Petry have not been served within the 120-day period set forth in Federal Rule of Civil Procedure 4(m). Based on the foregoing, it is respectfully recommended that Defendant Butler and Petry's Motion to Dismiss be granted.

### B. Defendants Rubenstein and Vest:

In their Motion to Dismiss, Defendants Rubenstein and Vest argue that they have not been served with process. (Document No. 4, p. 5.) Defendant Rubenstein notes that "[a] Summons was issued to 'WV Department of Corrections, c/o Jim Rubenstein,' at the WVDOC's office address." (Id.) Defendant Rubenstein notes that the Return Receipt card was signed on behalf of the WVDOC by R. Jordon. (Id.) Defendant Vest notes that "[a] Summons was also issued to 'WVA Division of Corrections, c/o William Webb,' at the address for BCC." (Id., pp. 5 - 6.) Defendant William Vest states that "'William Webb' is not a Defendant, and the envelope containing the Summons and Complaint was returned to the Raleigh County Circuit Clerk's office marked 'Return to Sender, Not Deliverable As Addressed, Unable To Forward.'" (Id., p. 6.) Plaintiff failed to file a Response to Defendants' Motion.

Based upon a review of the record, the undersigned finds that service of process was not effectuated upon Defendants Rubenstein or Vest pursuant to either the Federal or West Virginia Rules of Civil Procedure. As stated above, the Federal Rules of Civil Procedure do not allow for service of the complaint and summons by mail, except as authorized by the State rules. To effectuate personal service by certified mail pursuant to the West Virginia Rules of Civil Procedure, the clerk must send "a copy of the summons and complaint to the individual to be served by certified mail, return receipt requested, and delivery restricted to the addressee." W. Va. R. Civ. Pro. Rule 4(d)(1)(D). In the instant case, Plaintiff failed to comply with the West

Virginia Rules of Civil Procedure inasmuch as the Clerk of Raleigh County did not restrict delivery of the certified mailing to Defendant Rubenstein. (Document No. 1-1.); See White v. Wells Fargo Bank, 2014 WL 3882181, * 9 (S.D.W.Va. Aug. 7, 2014)(J. Berger)("The Plaintiff failed to comply with the West Virginia Rules of Civil Procedure inasmuch as the Clerk of McDowell County Circuit Court did not send the certified mail, and delivery of the certified mailing was not restricted to the addressee.") Specifically, the Return Receipt card was signed by R. Jordan. (Document No. 1-1, p. 6.) Concerning Defendant Vest, Plaintiff failed to comply with the West Virginia Rules of Civil Procedure inasmuch as the Clerk of Raleigh County did not send the certified mail, or restrict delivery of the certified mailing, to Defendant Vest.[2] (Document No. 3-1, pp. 5 - 7.) The Court further notes that Defendants Rubenstein and Vest have not been served within the 120-day period set forth in Federal Rule of Civil Procedure 4(m). Based on the foregoing, it is respectfully recommended that Defendant Rubenstein and Vest's Motion to Dismiss be granted.

2. **Official-Capacity Claims:**

In their Motion to Dismiss, Defendants argue that any official capacity claims against them should be dismissed. (Document No. 4, pp. 10 - 11.) Plaintiff did not file a Response to Defendants' Motion. Suits against a state or state agencies for monetary damages are barred by the Eleventh Amendment to the United States Constitution.[3] See Will v. Michigan Dept. of State

---

[2] The certified mailing was addressed to William Webb, instead of William Vest. The undersigned notes that William Webb is not a named defendant. Gary Webb, however, is named as a Defendant.

[3] The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

Police, 491 U.S. 58, 66, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989). The Eleventh Amendment protects states from being sued in federal court on the basis of state law. See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 117, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); Westinghouse Elec. Corp. v. West Virginia Dept. of Highways, 845 F.2d 468, 470 (4th Cir.), cert. denied, 488 U.S. 855, 109 S.Ct. 143, 102 L.Ed.2d 116 (1988). The Eleventh Amendment immunity not only applies to states and state agencies, but extends to suits filed against state officials when "the relief sought and ordered has an impact directly on the State itself." Pennhurst, 465 U.S. at 117, 104 S.Ct. at 917. See also, Cromer v. Brown, 88 F.3d 1315, 1332 (4th Cir. 1996)("This immunity extends to 'arm[s] of the State,' (citations omitted) including state agencies and state officers acting in their official capacity. (citations omitted)). "Neither a state nor its officials acting in their official capacities are 'persons' under § 1983." Will v. Michigan Dept. of State Police, 491 U.S. at 71, 109 S.Ct. at 2312. To the extent Plaintiff seeks monetary damages from Defendants in their official capacities, the undersigned finds that Plaintiff's claims are barred by the Eleventh Amendment and should be dismissed.

**3.     Improper Parties:**

In their Motion to Dismiss, Defendants argue that Plaintiff's claim against the WVDOC must be dismissed because the WVDOC is not a "person" under Section 1983. (Document No. 4, pp. 10 - 11.) Plaintiff did not file a Response to Defendants' Motion. It is well recognized that a Section 1983 claims must be directed at a "person." See Preval v. Reno, 203 F.3d 821 (4th Cir. 2000)(unpublished)(finding that the Piedmont Regional Jail is not a "person" under Section 1983); Roach v. Burch, 825 F.Supp. 116, 117 (N.D.W.Va. 1993)(stating that the West Virginia Regional Jail Authority is not a "person" under Section 1983); also see Will v. Michigan Dept.

of State Police, 491 U.S. at 66, 109 S.Ct. at 2309(Suits against a state or state agencies for monetary damages are barred by the Eleventh Amendment to the United States Constitution); Webb v. Parsons, 2011 WL 2076419 (S.D.W.Va. May 6, 2011)(finding that the West Virginia Regional Jail Authority, an agency of the State of West Virginia, is immune from suit under the Eleventh Amendment). Accordingly, the undersigned finds that the WVDOC is not a "person" as required by Section 1983.

**4.      Failure to Exhaust:**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[4] Woodford v. Ngo, 548 U.S. _81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau

---

[4] 42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), *aff'd*, 54 Fed.Appx. 159 (4th Cir. 2003), *cert. denied*, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing

prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. The Fourth Circuit stated in Anderson, 470 F.3d at 683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into

whether the inmate exhausted all administrative remedies.

The West Virginia Division of Corrections' Policy Directive 335.00 establishes procedures whereby state inmates may seek review of complaints which relate to any aspect of their imprisonment. Within 15 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must submit a G-1 Grievance Form to the Unit Manager. The Unit Manager must respond to the inmate's Grievance within five business days. If the Unit Manager's response is unfavorable, the inmate may appeal within five working days to the Warden/Administrator by filing a G-2 Grievance Form. The Warden/Administrator must respond to the appeal, in writing, within five working days. If the Warden/Administrator, in his/her discretion, determines that an investigation is warranted, a final response shall be made to the inmate within 30 working days. If the Warden/Administrator's response is unfavorable, the inmate may appeal within five working days to the Commissioner/designee of the Division of Corrections. The Commissioner must respond to the appeal within ten working days. The administrative process is exhausted when the Commissioner responds to the inmate's final appeal. The entire process takes about 60 days to complete.

In their Motion, Defendants argue that Plaintiff failed to exhaust his administrative remedies. (Document No. 4, pp. 6 - 10.) Defendants state that "[a]s set forth in Plaintiff's Complaint and the attachments to the Complaint, any grievances filed regarding the subject matter at issue in his lawsuit were untimely and failed to comply with established procedures." (Id.) Defendants explain that even though Plaintiff filed grievances concerning his claims involving the payment of rent and the lack of payment for his work in the kitchen, these grievances were denied as untimely. (Id., pp. 8 - 9.) Concerning Plaintiff's claim involving his

personal property, Defendants argue that Plaintiff failed to file any grievance concerning such a claim. (Id., p.) Plaintiff did not file a Response to Defendants' Motion.

In his Complaint, Plaintiff acknowledges that he did not fully exhaust his administrative remedies. (Document No. 1-1, p. 4.) Plaintiff contends that he had difficulty because he was transferred from Beckley Correctional Center, he was confused by the grievance process, and the "time limits were a headache."(Id.) Plaintiff further appears to contend that exhaustion would have been futile because staff always finds an excuse to deny his grievances. (Id.). A review of the record reveals that Plaintiff's grievances were untimely concerning his claims involving the payment of rent and the lack of payment for his work in the kitchen. The undersigned notes that the Plaintiff alleges that he was improperly charged rent and was not paid for his work in the kitchen while he was incarcerated at Beckley Correctional Center. Plaintiff was transferred from Beckley Correctional Center to Prunytown Correctional Center on February 21, 2014. Thus, the latest Plaintiff could have filed his grievance concerning the foregoing was March 7, 2014 (15 days after his transfer from Beckley Correctional Center). The record, however, reveals that Plaintiff's grievances were not filed until June 16, 2014, and July 11, 2014.[5] (Document No. 3-1, pp. 11 - 17.) Thus, Plaintiff's grievances were clearly untimely. Concerning Plaintiff's claim that he was improperly removed from the work release program and his personal property was mishandled by Beckley Correctional Center, the undersigned finds no indication that Plaintiff filed any administrative remedies regarding these claims. To the extent Plaintiff argues he should be excused from exhaustion because it was too difficult or futile, his argument is without merit.

---

[5] Plaintiff filed an "Inmate Request to Staff" dated December 30, 2013, complaining that he had "not been able to go on job pass from the 15th of November." (Document No. 3-1, p. 8.) Plaintiff, however, did not assert such a claim in his Complaint.

The United States Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion requirements. . . ."[6] Booth v. Churner, 532 U.S. 741, n. 6, 121 S.Ct. 1819, 1825, 149 L.Ed.2d 958 (2001); also see Massey, 196 F.3d at 727("[T]here is no futility exception to the PLRA's exhaustion requirement."); Jacocks v. Hedrick, 2006 WL 2850639, * 5 (W.D.Va. Sept. 29, 2006)(finding that inmate's alleged pain and suffering after the loss of his eye were not special circumstances that would excuse his failure to exhaust where he had filed prior grievances complaining of other matters). Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss be granted. The undersigned finds it unnecessary to consider the other reasons which Defendants have submitted for dismissal.

5.     **State Board of Risk and Insurance Management:**

Based upon a review of the docket sheet, Plaintiff's Complaint was filed more than six

---

[6] Plaintiff appears to rely on the exhaustion standard for Section 2241 Petitions. Unlike the exhaustion requirement for Section 1983 and *Bivens* actions, the exhaustion requirement for Section 2241 Petitions are judicially imposed. *See Moscato v. Federal Bureau of Prisons*, 98 F.3d 757 (3rd Cir. 1996); *McCallister v. Haynes*, 2004 WL 3189469 (N.D.W.Va. 2004). Since the exhaustion requirement for a Section 2241 Petition is judicially imposed, the Court has discretion to waive that requirement in certain circumstances. *See LaRue v. Adams*, 2006 WL 1674487, * 8 (S.D.W.Va. June 12, 2006)(*citing Smith v. Angelone*, 111 F.3d 1126, 1129-31 (4th Cir.), *cert. denied*, 521 U.S. 1131, 118 S.Ct. 2, 138 L.Ed.2d. 1036 (1997)). Courts, therefore, have recognized that exhaustion may be excused under certain circumstances, such as by a showing of futility or irreparable injury. It is clear, however, that "[e]haustion of administrative remedies is not rendered futile simply because an inmate anticipates he will be unsuccessful in his administrative appeals before the 12-month pre-release mark." *Wright v. Warden*, 2010 WL 1258181, * 1 (D.Md. Mar. 24, 2010)(slip copy); *also see Yannucci v. Stansberry*, 2009 WL 2421546, * 3 (E.D.Va. Jul. 28, 2009)(slip copy)(finding that inmate's claim that "he ran out of time to complete the administrative exhaustion process prior to filing his petition is not a sufficient excuse for failing to exhaust his claims"); and *Garrison v. Stansberry*, 2009 WL 1160115, * 3 (E.D.Va. Apr. 29, 2009)(slip copy)(explaining that granting review of RRC placement claims because of "time-sensitivity" would encourage the filing of similar petitions before the administrative remedy process has run its course, which would "both undermine the effectiveness of the administrative review process and burden the Court with superfluous claims.").

months ago and service of process has not been accomplished upon the State Board of Risk and Insurance Management.[7] Federal Rule of Civil Procedure 4(m) requires that service of a summons and complaint be made upon a defendant within 120 days of the filing of the complaint. Dismissal of the complaint without prejudice is required upon the plaintiff's failure to accomplish service of process within 120 days unless the plaintiff can show good cause why service was not made within that period. Accordingly, Plaintiff is hereby notified that the undersigned recommends Plaintiff's cause of action be dismissed without prejudice as to the State Board of Risk and Insurance Management unless Plaintiff can show good cause why service was not made within the 120-day period.[8]

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT** Defendants WVDOC, Rubenstein, Vest, Webb, Frazier, Toler, Leggett, Aliff, Butler, and Petry's Motion to Dismiss (Document No. 3), **DISMISS** Plaintiff's Complaint as to all Defendants, and **REMOVE** this matter from the District Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17)

---

[7] Although Plaintiff is proceeding *pro se*, the Court finds that it is his responsibility to ensure proper service of process. *See* Fed. R. Civ. P. 4(c)(1).

[8] Rule 4(m) provides that "[i]f a defendant is not served within 120 days after the complaint is filed, the court - - on motion or on its own *after notice* to the plaintiff - - must dismiss the action without prejudice against that defendant . . .." (emphasis added)

days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: January 27, 2016.

Omar J. Aboulhosn
United States Magistrate Judge